IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Elaine Jerotha Craig,               ) | Civil Action No. 6:16-3562-MGL-KFM |
|             Plaintiff,    ) | |
|                     ) | **REPORT OF MAGISTRATE JUDGE** |
|    vs.                   ) | |
|                     ) | |
| Nancy A. Berryhill, Acting      ) | |
| Commissioner of Social Security,   ) | |
|                     ) | |
|             Defendant.    ) | |

This case is before the court for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.), concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1] The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. 405(g)) to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits under Title II of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

The plaintiff filed an application for disability insurance benefits ("DIB") on December 23, 2013, alleging that she became unable to work on December 20, 2013. The application was denied initially and on reconsideration by the Social Security Administration. On June 25, 2014, the plaintiff requested a hearing. By letter dated March 14, 2016, the plaintiff amended her alleged onset date to December 23, 2014. The administrative law judge ("ALJ"), before whom the plaintiff and Tonetta Watson-Coleman, an impartial vocational expert, appeared at a video hearing on March 23, 2016, considered the case *de novo* and, on April 20, 2016, found that the plaintiff was not under a disability as defined in

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

the Social Security Act, as amended. The ALJ's finding became the final decision of the Commissioner of Social Security when the Appeals Council denied the plaintiff's request for review on September 16, 2016. The plaintiff then filed this action for judicial review.

In making the determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

(1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

(2) The claimant has not engaged in substantial gainful activity since December 23, 2014, the amended alleged onset date (20 C.F.R. § 404.1571 *et seq.*).

(3) The claimant has the following severe impairments: degenerative disc disease and hip and knee pain (20 C.F.R. § 404.1520(c)).

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

(5) After careful consideration of the entire record, I find that the claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b). Specifically, the claimant is able to lift and carry up to 20 pounds occasionally and 10 pounds frequently; frequently stand and walk; occasionally sit; occasionally perform postural activities; never climb ladders, ropes, or scaffolds; and must have the option to sit and stand at will.

(6) The claimant is capable of performing past relevant work as a mortgage quality specialist and service dispatcher. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. § 404.1565).

(7) The claimant has not been under a disability, as defined in the Social Security Act, from December 23, 2014, through the date of this decision (20 C.F.R. § 404.1520(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

Under 42 U.S.C. § 423(d)(1)(A), (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that meets or medically equals an impairment contained in the Listing of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1, (4) can perform his past relevant work, and (5) can perform other work. *Id.* § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* § 404.1520(a)(4).

A claimant must make a *prima facie* case of disability by showing he is unable to return to his past relevant work because of his impairments. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). Once an individual has established a *prima facie* case of disability, the burden shifts to the Commissioner to establish that the plaintiff can perform alternative work and that such work exists in the national economy. *Id.* (citing 42 U.S.C. § 423(d)(2)(A)). The Commissioner may carry this burden by obtaining testimony from a vocational expert. *Id.* at 192.

3

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id.* Consequently, even if the court disagrees with Commissioner's decision, the court must uphold it if it supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## EVIDENCE PRESENTED

The plaintiff was 54 years old on her amended alleged disability onset date (December 23, 2014) and 55 years old on the date of the ALJ's decision (April 20, 2016). She graduated college in 1983 and has a bachelor of science degree in finance (Tr. 35). She has past relevant work experience as a mortgage quality specialist and service dispatcher (Tr. 23-24). The plaintiff last worked at JP Morgan Chase as a loan specialist until she was laid off in 2013, and she received unemployment in 2014 (Tr. 35-36).

On July 22, 2010, an MRI of the plaintiff's right leg showed degenerative joint disease at the knee (Tr. 239). On December 10, 2010, the plaintiff was seen at Columbia Veterans Administration Medical Center ("Columbia VA") for right-sided weakness. Her weakness involved the right extremities with the right arm progressively weaker and preventing her from doing chores. She had shooting pain in the right leg (Tr. 276). On March 10, 2011, the plaintiff reported chronic pain in the right joints. She had a positive rheumatoid arthritis screen of 24.6. She was easily fatigued (Tr. 269-72).

4

On February 21, 2013, the plaintiff was seen at Marion Medical Group for right-sided body pain. She had right arm weakness, and Cymbalta was prescribed (Tr. 328). On February 27, 2013, an MRI of the lumbar spine showed moderate thoracolumbar scoliosis. The plaintiff had Grade I anterolisthesis of L4 on L5, secondary to moderate-advanced facet arthropathy, worse on the right side. She also had degenerative spinal canal stenosis at L4-L5 with asymmetric right L4 foraminal stenosis due to disc protrusion and bulging. An MRI of the plaintiff's cervical spine showed facet arthrosis at the C5-C6 level. She was referred to neurosurgery (Tr. 330-31).

On March 5, 2013, the plaintiff reported that Cymbalta did not help, and she was still in pain (Tr. 327). The plaintiff returned to Marion Medical Group on January 6, 2014, with chronic pain from her spinal stenosis. She was not sleeping well due to ongoing numbness and burning in her right lateral leg. She received epidural injections with nerve root injections, but they had not been effective. She was concerned about having surgery due to the possibility that it would not work or that it would cause paralysis. Neurontin was prescribed (Tr. 316-18).

On March 18, 2013, the plaintiff was seen by James J. Brennan, M.D., at Neurosurgery and Spine, PC, for weakness due to back and right leg pain. She also reported some neck and right arm pain and weakness. The plaintiff had decreased range of motion of her head and neck. She experienced paresthesia in the right upper and lower extremity, which was poorly dermatomal. She had reduced muscle strength in her bilateral grip. The plaintiff had an antalgic gait and favored her right leg. Dr. Brennan recommended epidural steroid injections, physical therapy, Voltaren, and Zanaflex (Tr. 308-10). On April 18 and May 14, 2013, the plaintiff received her first and second epidural steroid injections (Tr. 304, 306).

On September 9, 2013, the plaintiff reported weakness and pain with minimal, if any, improvement after her injections. She had decreased sensation in a right L4-L5

5

distribution. Her gait was antalgic. Dr. Brennan felt the plaintiff was failing conservative measures, but recommended physical therapy and a bilateral L4-L5 selective nerve root injection. If she continued to have no improvement, then Dr. Brennan recommended a decompression and fusion-type surgery (Tr. 301-03). On October 23, 2013, the plaintiff received her selective nerve root injection (Tr. 299-300). On November 20, 2013, the plaintiff reported continued pain and weakness. She had a decrease in sensation in the right L4-L5 distribution. Her gait was antalgic. Dr. Brennan recommended physical therapy, and if there was no improvement, he would recommend surgery (Tr. 296-98).

On March 3, 2014, Lindsey Crumlin, M.D., opined that the plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry ten pounds. She could stand, walk, and sit for six hours in an eight-hour workday. She could frequently balance and could occasionally perform all other postural activities (Tr. 56-57). On May 20, 2014, James Upchurch, M.D., agreed with Dr. Crumlin's assessment but added a limitation of avoiding concentrated exposure to cold, heat, vibration, and hazards (Tr. 68).

On July 1, 2014, the plaintiff was seen at the Columbia VA for chronic right radicular lower extremity pain. She was status post epidural steroid injection without relief. She also had right upper extremity weakness. The plaintiff had decreased range of motion of her back, decreased range of motion in all planes of her upper extremities, and degenerative joint disease of the right knee. She was prescribed gabapentin (Tr. 369-77).

On July 18, 2014, the plaintiff began treatment at Dillon Family Medicine with Michael N. Brown, M.D. (Tr. 366). On August 15, 2014, she reported back pain that radiated into both legs (Tr. 363). On December 17, 2014, the plaintiff had lower back pain and right leg pain. She had low back tenderness and a decreased range of motion (Tr. 357-58).

6

On February 17, 2015, the plaintiff still had lower back pain and right leg pain that included tingling and numbness. She had tenderness, decreased range of motion, positive straight leg raise tests, and diminished sensation in both legs (Tr. 355-56). On June 18, 2015, the plaintiff was seen for shortness of breath and low back pain that radiated to her right leg (Tr. 349). On August 6, 2015, the plaintiff reported pain in her right hip and knee. She had low back tenderness, decreased range of motion, and a positive straight leg raise test (Tr. 346-47). On September 23, 2015, the plaintiff had right hip pain with walking and sitting (Tr. 343-44).

On September 30, 2015, an MRI of the plaintiff's lumbar spine showed moderate disc displacement at L3-L4 and moderate to marked central canal stenosis at L4-L5. There was moderate rightward facet arthropathy and rightward foraminal narrowing due to spondylosis (Tr. 382-83). On October 14, 2015, the plaintiff was seen for leg and hip pain (Tr. 340-41). On November 18, 2015, she reported arm pain as well (Tr. 336-37).

On November 30, 2015, Dr. Brown opined that the plaintiff could stand and/or walk for zero-two hours and sit for four hours in an eight-hour workday. She could occasionally lift ten pounds, occasionally grasp and handle items, frequently finger, and never stoop (bend) or crouch. The plaintiff's diagnoses included spondylolisthesis of the lumbar spine, scoliosis, and right arm weakness. Her prognosis was poor. Her pain was frequently severe enough to interfere with attention and concentration needed to perform even simple work tasks. Signs and symptoms included positive straight leg raising tests, impaired sleep, anxiety, and muscle weakness. Dr. Brown anticipated that the plaintiff's impairments would cause her to be absent from work more than four days per month (Tr. 368).

On February 19, 2016, the plaintiff still had right hip and right leg pain. She had low back tenderness, decreased range of motion, and a positive straight leg raise test. Lyrica was prescribed (Tr. 379-80). On March 2, 2016, an MRI of the plaintiff's lumbar

spine showed moderate concentric disc displacement at L3-L4 and moderate to marked central canal stenosis at L4-L5 with spondylolisthesis of 3-4 mm. She had marked disc displacement and foraminal narrowing with moderate facet arthropathy (Tr. 384).

At the administrative hearing, the plaintiff testified that she lived with her husband and her two adult sons. The plaintiff testified that she is able to drive and drove herself to the administrative hearing (Tr. 35). The plaintiff was laid off from her job at JP Morgan Chase and received unemployment. She was going to try to work through Kelley Services, but she never took a position because she thought she would not be able to sit long enough to do the work. Before working at JP Morgan, the plaintiff worked for Time Warner as a dispatcher until she was laid off and hired at JP Morgan (Tr. 34-37).

The plaintiff testified that she could not work because she had no strength on her right side. Her previous jobs required her to sit at a computer for eight hours working with a lot of stress. Her medications included tramadol and gabapentin. The plaintiff had hip pain that was constant. The doctor told her it was coming from a pinched nerve in her back. Her hip pain was worse when she was walking. She also had leg pain on the right side. She did not require an assistive device to walk. She also indicated that she tries to walk about 20 minutes a day. She also does about 20 minutes of housework before needing to sit and rest with her leg propped up. The plaintiff then has to alternate between sitting and standing because she gets "stiff." She enjoys watching a little television, but also tries to "keep moving" throughout the day. The plaintiff also does the grocery shopping, though she gets "tired" and does not pick up anything heavy. She does the laundry, though her son has to help her carry the basket. The plaintiff also goes to church on a regular basis. She did not go out with girlfriends. She was able to use the internet until her right arm bothered her. She did not stay on the internet very long. She had outside dogs. She did not have any hobbies (Tr. 37-40).

The plaintiff testified that she was having problems with her back when she was still working. She had an MRI and saw a neurosurgeon. He gave her epidural shots and advised her to try physical therapy. She stopped seeing the neurosurgeon when she was laid off and her insurance stopped. She could not afford to see him without insurance. She started to see Dr. Brown at Dillon Family Medicine. He provided her with medications. After an MRI, Dr. Brown referred the plaintiff to a specialist, and she had an appointment the month after her hearing. The plaintiff reported that her main impairment was her back and leg pain. She also felt pain in her arms and numbness in her legs. She could not stand to wash the dishes because her legs went numb. If she was standing for longer than 15 minutes, she would have to lean over to the sink and try to wash them. Cooking also bothered her. After 15 minutes, her legs went numb and she would have to sit down. She also had problems standing in the shower, so she used a little bench. She was able to dress herself. The plaintiff also had asthma and took albuterol. The asthma bothered her on a hot day, but her main issue was her back (Tr. 41-45).

The vocational expert classified the plaintiff's past work as that of mortgage quality specialist and service dispatcher (Tr. 46). The ALJ proposed the following hypothetical:

> Assume a hypothetical individual with the claimant's age, education and past jobs. Assume the individual can do light work, frequently climb ramps and stairs, occasionally climb ladders, ropes, and scaffolds, stoop, kneel, crouch, and crawl.

The vocational expert testified that the individual could perform the plaintiff's past relevant work. The individual could also perform work as a ticket seller, SVP of 2, unskilled, light, *Dictionary of Occupational Titles* ("*DOT*") #211.467-030, with 3,308,330 jobs nationally; order caller, SVP of 2, unskilled, light, *DOT* #209.667-014, with 2,889,970 jobs nationally; and work ticket distributor, SVP of 2, unskilled, light, *DOT* #221.667-010, with 297,050 jobs nationally. The vocational expert stated that her testimony was consistent

with the *DOT*. The vocational expert reported that the plaintiff would have transferable skills for some semi-skilled jobs such as bank teller. The vocational expert testified that if the individual were limited to sedentary work, she would be able to do her past work (Tr. 46-47).

The attorney asked the vocational expert to consider an individual who was limited to light work, with occasional postural limitations, but never climbing ladders, ropes, or scaffolds. The individual would need an option of sitting at will. The vocational expert stated that the jobs cited could all be performed with a sit/stand option at will. This information was based on her professional experience with those jobs. The vocational expert also testified that an individual who was limited to sedentary work, but could not sit for longer than 30 to 45 minutes at one time, could work as long as the worker was able to remain on task and complete the particular amount of work. If their need to sit and stand every 30 to 45 minutes rendered them off task, then the worker would not be able to retain or maintain employment. A worker would also not be able to retain or maintain employment if she missed work three days a month. An individual who was limited to sitting no more than four hours and standing and walking no more than two hours would not be able to retain or maintain employment (Tr. 48-50).

## ANALYSIS

The plaintiff argues that the ALJ erred by failing to properly (1) explain the residual functional capacity ("RFC") findings, (2) assess medical opinion evidence, and (3) consider her subjective complaints (doc. 17 at 12-25).

The plaintiff argues that the ALJ failed to explain the RFC findings as required by Social Security Ruling ("SSR") 96-8p, which provides in pertinent part:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraph (b), (c), and (d) of 20 C.F.R. §§ 404.1545 and 416.945. Only after that may RFC be expressed

in terms of the exertional level of work, sedentary, light, medium, heavy and very heavy.

SSR 96-8p, 1996 WL 374184, at *1.  The ruling further provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id.* at *7 (footnote omitted).  Further, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.*

Specifically, the plaintiff argues that the ALJ failed to consider her right arm pain in the RFC assessment (doc. 17 at 20-21).  The plaintiff testified that she could not work because of weakness on her right side (Tr. 37).  She reported that she felt pain in her right leg, right side, and arms (Tr. 43).  In her report about previous work, she wrote that she was in constant pain from writing (Tr. 199).  In a mobility questionnaire, the plaintiff said she was in pain when she wrote, and she could not write for very long (Tr. 207-208).  In a pain questionnaire, she indicated that the pain in her right leg and back spread to her right arm, and it was hard to write (Tr. 216).  While the Commissioner argues that "there is nothing in the record to support the plaintiff's sudden claim for upper extremity limitations" (doc. 18 at 20), the medical evidence shows the plaintiff reported right arm pain and weakness on February 21, March 18, and September 9, 2013 (Tr. 301, 308, 328).  On March 18, 2013, Dr. Brennan, neurosurgeon, noted decreased dermatomal sensation on the right upper and lower extremities with reduced muscle strength in her bilateral grip (Tr. 310).  On July 1,

2014, the plaintiff had weakness in her right upper extremity when compared to her left upper extremity, and she had decreased range of motion in her right upper extremity (Tr. 373). She reported arm pain and limited strength of the right arm to Dr. Brown in November 2015 (Tr. 333, 336). In his November 30, 2015, opinion, Dr. Brown noted that the plaintiff had right arm weakness of unknown etiology and went on to opine, among other things, that the plaintiff could only occasionally lift ten pounds and occasionally grasp and handle (Tr. 368).

The ALJ did not discuss any of the evidence regarding the plaintiff's right arm pain and weakness. As noted by the plaintiff (doc. 20 at 3), this is not a case in where the ALJ dismissed the plaintiff's claims of arm pain and weakness because of lack of evidence or credibility issues. Rather, the ALJ failed to discuss the evidence at all.[2] Without such discussion, the undersigned is unable to determine whether the ALJ's RFC finding is based upon substantial evidence and therefore is constrained to recommend that the matter be remanded for further consideration of the plaintiff's right arm pain and weakness.[3]

In light of the court's recommendation that this matter be remanded for further consideration as discussed above, the court need not address the plaintiff's remaining allegations of error as they may be rendered moot on remand. *See Boone v. Barnhart*, 353 F.3d 203, 211 n.19 (3d Cir.2003) (remanding on other grounds and declining to address

---

[2] The court expresses no opinion as to whether consideration of the evidence discussed herein will lead to different findings by the ALJ. Further analysis and discussion of the evidence may well not change the ALJ's conclusion.

[3] Notably, at the fourth step of the sequential evaluation process, the ALJ found that the plaintiff could perform her past relevant work as a mortgage quality specialist and service dispatcher as they are actually and generally performed (Tr. 23). The *Dictionary of Occupational Titles* provides that the job of mortgage quality specialist, as identified by the vocational expert, requires frequent handling (Tr. 46). *See* DICOT 249.362-022 (Mortgage Loan Processor), 1991 WL 672319. Moreover, with regard to the ALJ's alternative finding at step five that the plaintiff could perform other work that exists in significant numbers in the national economy, the representative occupations identified by the vocational expert and adopted by the ALJ all require at least frequent handling (Tr. 23-24, 46-47). *See* DICOT 211.467-030 (Ticket Seller), DICOT 209.667-014 (Order Caller), DICOT 221.667-010 (Work Ticket Distributor).

claimant's additional arguments).  However, as part of the overall reconsideration of the claim upon remand, the plaintiff's claims that the ALJ failed to properly consider her subjective complaints[4] and the opinion of treating physician Dr. Brown (doc. 17 at 12-17, 21-25; doc. 20 at 1-4) should be considered.

## CONCLUSION AND RECOMMENDATION

Now, therefore, based on the foregoing, it is recommended that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further consideration as discussed above.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

October 18, 2017
Greenville, South Carolina

---

[4] Effective March 28, 2016, approximately one month prior to the ALJ's decision in this case, SSR 96-7p, which concerns the evaluation of symptoms in disability claims, was superseded by SSR 16-3p, 2016 WL 1119029. *See* 2016 WL 1237954 (correcting effective date). SSR 16-3p discontinues use of the term "credibility," but "the methodology required by both SSR 16-3p and SSR 96-7, are quite similar. Under either, the ALJ is required to consider [the claimant's] report of his own symptoms against the backdrop of the entire case record." *Best v. Berryhill*, C.A. No. 0:15-cv-02990-DCN, 2017 WL 835350, at *4 n.3 (Mar. 3, 2017) (citations and internal quotation marks omitted).